UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

UNITED STATES OF AMERICA

      Plaintiff,

v.                              No.: 12-20016

JOSEPH C. HARRISON,

      Defendant.

***DEFENDANT'S SENTENCING COMMENTARY***

NOW COMES  the Defendant, JOSEPH C. HARRISON, by and through his attorney,

Elisabeth R. Pollock of the Federal Public Defender's Office for the Central District of Illinois,

and for his Sentencing Commentary states as follows:

**I.      Procedural History**

On March 7, 2012, Defendant JOSEPH C. HARRISON (hereinafter referred to as

"Mr. Harrison") was charged by Indictment with one count of enticement of a minor in violation

of 18 U.S.C. §§ 2422(b) and 2246, two counts of travel with the intent to engage in illicit sexual

conduct in violation of 18 U.S.C. §§ 2423(b), (e), and 2426, and one count of penalties for a

registered sex offender in violation of 18 U.S.C. § 2260A. From approximately March 18, 2013,

through August 7, 2013, Mr. Harrison underwent a psychiatric exam pursuant to 18 U.S.C. §§

4241(b) and (c), 4247(b) and (c). On August 7, 2013, Mr. Harrison appeared for a competency

hearing, was found to be competent.

From January 27, 2014 through January 30, 2014, the first jury trial was held in this

matter. On January 30, 2014, Presiding Judge Michael P.  McCuskey declared a mistrial,

ordered Mr. Harrison to undergo a second psychiatric or psychological examination to determine Defendant's competency pursuant to 18 U.S.C. §§ 4241(b) and (c), 4247(b) and (c).  On May 8, 2014, a Competency Hearing was held and Mr. Harrison was again found competent to proceed with criminal adjudication in this case.

From December 3, 2014 through December 5, 2014, Mr. Harrison's second trial occurred.  On December 5, 2014, he was found guilty on all counts by a jury. His sentencing is set for April 17, 2015, at 11:00 am.

## II.    Defendant's Objections to the Presentence Report

### A.    Obstruction of Jusice - Paragraphs 16, 26

In the Revised Presentence Report, Mr. Harrison was given a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. (PSR ¶¶ 16, 26) The enhancement was given based on three factors: first, that Mr. Harrison lied on the witness stand during the first trial; second, that Mr. Harrison faked a medical condition on the witness stand during the first trial; and third, that Mr. Harrison malingered during his second competency examination in 2014.

Section 3C1.1 states that "[I]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." In the present case, Mr. Harrison's enhancement is based on his statements to the Court during his trial, which the Probation Officer believes to be false, and his behavior during the time he was incarcerated at MCC Chicago in 2014 to undergo a competency examination, thereby delaying the proceedings.

2

The malingering diagnosis is not based on the actual psychological testing that Mr. Harrison underwent, nor is it based on his statements to the evaluating staff at MCC Chicago. Rather, it was based on his behavior while incarcerated. He tested negative when given the Test of Memory Malingering (TOMM). According to the report, the TOMM is a "50-item visual recognition test of common objects. It provides a systematic method to assist in the detection of feigned memory impairments and is insensitive to neurological impairments. Mr. Harrison's performance on the TOMM is suggestive of an individual who gave an adequate effort to recalling items correctly. The format of the TOMM includes two recall trials and one retention trial. Scores that fall below 45 on any trial are suggestive of efforts to feign memory impairment. Mr. Harrison's performance on each of the first two trials was 48 and 50 of a possible 50. His performance on the retention trial was 49 of a possible 50. This suggests the defendant did not attempt to feign memory impairments when completing this assessment." (R. 47).

Mr. Harrison was diagnosed as malingering because of his behavior before he arrived at MCC Chicago for his second evaluation, which was ordered by Judge McCuskey after the Court declared a mistrial due to multiple factors, including Mr. Harrison's apparent fainting spell. The second competency examination was conducted by the same psychiatrist that did his first examination. The doctor noted that during the first evaluation Mr. Harrison was compliant and cooperative and did not demonstrate any symptoms of a mental illness, however he began misbehaving after the mistrial was declared. Mr. Harrison was uncooperative and displayed a lack of awareness of others, and would not dress himself; he would verbally agree to comply with directions and then fail to initiate the appropriate actions, and refused to bathe and soiled the

clothing he wore. He stopped this behavior after he was assaulted by a fellow inmate. The psychiatrist therefore labeled him as malingering based on the marked differences between the two evaluation periods and his inconsistent presentation during the current evaluation.

Notably, Mr. Harrison did not fail any of the mental health testing, which was the purpose for which he was sent to MCC Chicago. He passed the malingering test and was found not to be misrepresenting his mental condition. There was no medical diagnosis indicating that when he fainted on the stand that it was fake; indeed, getting lightheaded and dizzy can result from stress, and no one can say that testifying in a trial where your freedom is on the line is not a stressful situation. Additionally, one of the jurors was a nurse and noted that his complexion and breathing was not normal, so his distress was visible to others. Another relevant fact is that Judge McCuskey ordered the mistrial in part because of an issue that arose with a juror, after it was discovered that an empaneled juror was in fact under federal investigation by this district's United States Attorney's Office. The mistrial was based on a variety of factors not limited to Mr. Harrison's fainting spell.

Based on the foregoing, it cannot be said that Mr. Harrison was intentionally delaying the proceedings by faking a mental condition. It can also not be said that his statements on the witness stand were intentionally false; at the first trial, Mr. Harrison's statements were rambling, at times incoherent, and the product of stress. He should not receive an obstruction of justice enhancement on that basis.

**B.     Supervised Release Conditions - Paragraphs 74, 76, 77, 82**

In response to the Initial Presentence Report, Mr. Harrison lodged objections to Paragraphs 74, 76, 77 and 82 because those conditions of supervised release were either vague

4

and overbroad or not applicable to his case. Since that time, the 7th Circuit Court of Appeals has

issued an opinion in *United States v. Kappes*, 2015 WL 1546810 (7th Cir. April 8, 2015), which

resolves the objections. Mr. Harrison is withdrawing his objection to Paragraph 77, and the

remaining Paragraphs will be resolved by agreement of the parties.

## III.    Sentencing Recommendation

Mr. Harrison is requesting a below-Guidelines sentence in this case. If his objection is

overruled, his Guidelines range on Counts 1 through 3 is 324 to 405 months, and an additional

120 months must be imposed consecutively on Count 4. The range therefore becomes 444 to 525

months, which is equivalent to life imprisonment. Although the offense in this case is extremely

serious, it is nowhere near as serious as many other cases we see in which children are forcibly

abused, raped, or videotaped while being coerced into sexual acts with adults. Mr. Harrison

engaged in a consensual relationship with a minor, and "made out" with her on two occasions.

There was no penetrative sexual activity, and although we do not know what could have

occurred in the future had he not been arrested, those acts ultimately did not occur and he would

never have forced them onto the victim. The victim testified at trial that whenever she told Mr.

Harrison to stop or slow down that he complied.

Before he became involved in the instant offense, Mr. Harrison was a hard worker and

family-oriented man who had a difficult childhood. Letters of support from his family are

attached hereto as Exhibit A.

WHEREFORE, Defendant JOSEPH CAIN HARRISON respectfully requests that this

Court find that he should not receive the two-level enhancement for obstruction of justice under

U.S.S.G. 3C1.1, and that this Court sentence him to a below-Guidelines sentence more appropriate to the facts of this case.

Respectfully Submitted,

JOSEPH C. HARRISON, Defendant

THOMAS W. PATTON
Federal Public Defender

BY: /s/ Elisabeth R. Pollock
ELISABETH R. POLLOCK
Assistant Federal Public Defender

### *CERTIFICATE OF SERVICE*

I hereby certify that on April 16, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorney Elly Peirson.

/s/ Elisabeth R. Pollock
ELISABETH R. POLLOCK
Assistant Federal Public Defender
300 West Main Street
Urbana, Illinois 61801
Telephone: (217) 373-0666
Facsimile: (217) 373-0667
Email: Elisabeth_Pollock@fd.org

# EXHIBIT A

Cathy Childers

153 Gambill Lane

LaVergne, TN. 37086

Honorable Judge Myerscough,

I am writing to you on behalf of Joseph Harrison in hopes that you will take into consideration his personal character before issuing his sentence.

I was married to Joseph for eight years. I have known him for almost 16 years. During this time I have always thought Joseph to be a very reserved, and respectful individual. He never gets upset or angry, he was never abusive in any form toward me or anyone else.

Joseph was a hard worker. He worked everyday and took pride in the work that he did. He loves to learn new tasks and had a thirst for knowledge, as most intelligent people do. He was a graduate from Fairview High School in Fairview, TN. and ITT Tech in Nashville, TN.

While married we attended Calvary Baptist Church in Smyrna, TN. Joseph has always found peace with prayer for any obstacles in his life. He was very active in his role in his family. We often visited with his family on weekends spending time with his mother and step-father.

While Joseph may have made some poor choices that has led him to his current situation, I do not think that he deserves a life of imprisonment. I think that he still has some good to bestow on this world and should be given a chance to make a difference. He is kind, caring, and a determined individual. I hope you take this into consideration while making your decision, as I'm sure it is not an easy one to make when dealing with another human's life.

Thank you for your time in this matter.

Kind Regards,

Cathy Childers

Cathy Childers

1

Pearl Jane Taylor
7312 Taylor Road
Fairview, TN 37062
(615)799-6107

March 15, 2015

Judge Sue E. Myerscough
Federal Courthouse
Urbana, Illinois 61801

RE:  United States of America v. Joseph Harrison
        U.S. District Court Case No. 12-20016

Your Honor,

   I am Pearl Taylor and I am writing this letter on behalf of my son,  Joseph Harrison.
My heart is broken because  I have been unable to really help my son. I do not have the
money for a lawyer. I have talked to Joseph every week for 3 years and two months,
since his arrest.  I know he had to be hospitalized and I felt very helpless in his situation.

   I love Joseph and he has always been a good son, he never got involved with alcohol
or drugs.  He has always been a quiet, easy going person who respected people and got
along with anyone he met.  Joseph grew up in a single parent home, I divorced Joseph's
father when Joseph was 8 years old.   His father was absent most of Joseph's life.

   Joseph grew up with his brother and sister.  He was the oldest of the three and he
always helped me take care of his siblings.   Being a single parent, I worked 40 or more
hours per week to support my family.  I did not have the money for extra activities, so he
spent his spare time playing video games that his grandmother bought for him.  Joseph
did "graduate" from high school. We have always believed in God but we did not attend
Church on a regular basis.

   Joseph worked a part-time job and attended  ITT Technical Institute, where he was a
straight "A"  student. He was a  "natural" for understanding  computers.  Joseph stayed
with his grandmother to avoid a long drive to school after working part-time at night.

   When he got married, Joseph and his wife lived with her parents.  Joseph had a hard
time finding a job, being listed as a sex offender, so he was supported by his wife and
in-laws.  Joseph's father-in-law got sick and Joseph took care of him on a daily basis so
Joseph's wife and mother-in-law could work.

   Then he got a job working for Staples as a sales clerk.  Joseph was doing excellent.
And I hoped Joseph was getting back on track with his life.  Joseph and his wife always
came home for all holidays.  Joseph's wife has divorced him and remarried since
Joseph's arrest.

   I sincerely apologize for what my son, Joseph Harrison, has done and I am asking
you,  for a  fair and just sentence for my son.

Sincerely,

Pearl J. Taylor
Pearl J. Taylor

Kenneth R. Taylor
7312 Taylor Road
Fairview, TN 37062
(615)799-6107

March 15, 2015

Judge Sue E. Myerscough
Federal Courthouse
Urbana, Illinois 61801

RE: United States of America v. Joseph Harrison
        U. S. District Court Case No. 12-20016

Your Honor,

My name is Kenny Taylor. My wife is Pearl Taylor, Joseph's mother.  Joseph is my
stepson.  I think of him as my son.  I have known Joseph since 1999.  I have seen him
develop into a fine Christian man.  He worked part-time, even when he attended  ITT
Technical Institute, in Nashville, Tennessee.

Joseph is a thoughtful, kind, honest man, who has always tried to do right by everyone.
During his marriage, he didn't work most of the time.  But he did take care of his sick
father-in-law, proving he gives of himself when necessary.

I love Joseph and miss him very much.   I ask and pray that your Honor will be just and
fair with Joseph's sentencing.

Sincerely,

Kennett R. Jaylor

Kenneth R. Taylor

Jennifer Diane Harrison
7312 Taylor Rd.
Fairview, TN 37062
(615)799-6107

March 15, 2015

Judge Sue E. Myerscough
Federal Courthouse
Urbana, Illinois 61801

RE: United States of America v. Joseph Harrison
    U.S. District Court Case NO. 12-20016

Your Honor,

    My name is Jennifer Harrison and I am writing this letter on behalf of my brother, Joseph Harrison. Or Joe, as I like to call him and he is my oldest brother. This is a very hard letter to write because I never thought I would have to explain what a great brother I have. Joe has always been there for me. Now it is my turn to be there for him.

    Joe is an amazing big brother. Growing up we didn't have a lot. But we did have each other to lean on. We had our fights as well. Growing up with two older brothers was a trying experience. But knowing that I had two brothers who had my back, no matter what, is a great feeling. Joe protected me even when my other brother, John picked on me and no matter what the fight. He helped me with my homework and was there when mom was at work. He always called me on my birthday, my dad never called.. I didn't have a father growing up. I had a big brother instead. Growing up in a single parent household was hard. We stayed with our grandparents a lot. I remember walking to the store with my brothers and grandmother and being given a couple dollars to buy candy or what ever we wanted. Joe loved baseball cards and I loved gum. I would buy the packs of baseball cards, that had the sticks of gum in them. I would give Joe the baseball cards and I would keep the gum.

    Joe is also an amazing uncle. I am also raising my son as a single parent. My brother has been at every birthday party and holiday. And he had no problem getting down in the floor and playing with his nephew. Joe watched my son navigate through a cell phone without any help. I know where that trait came from because Joe was always been good with electronics.

    Your honor, I know that you have a very hard decision to make. But please know that whatever one you make. Let it be a fair and just decision. Thank you for allowing me to write and describe my brother.

Sincerely,

*Jennifer Harrison*

Jennifer Harrison